UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

DINGONI BURNS,

                Plaintiff,

v.

                6:16-CV-0820
                (GTS)

COMMISSIONER OF SOCIAL SECURITY,

                Defendant.
_____

APPEARANCES:                              OF COUNSEL:

OFFICE OF PETER W. ANTONOWICZ        PETER W. ANTONOWICZ, ESQ.
  Counsel for Plaintiff
148 West Dominick Street
Rome, NY 13440

U.S. SOCIAL SECURITY ADMIN.             DAVID L. BROWN, ESQ.
OFFICE OF REG'L GEN. COUNSEL – REGION II
  Counsel for Defendant
26 Federal Plaza, Room 3904
New York, NY 10278

GLENN T. SUDDABY, Chief United States District Judge

## DECISION and ORDER

      Currently before the Court, in this Social Security action filed by Dingoni Burns ("Plaintiff") against the Commissioner of Social Security ("Defendant" or "the Commissioner") pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), are the parties' cross-motions for judgment on the pleadings. (Dkt. Nos. 9, 10.) For the reasons set forth below, Plaintiff's motion for judgment on the pleadings is granted, Defendant's motion for judgment on the pleadings is denied, and the case is remanded to the Commissioner for further proceedings.

## I. RELEVANT BACKGROUND

### A. Factual Background

Plaintiff was 39 years old on the alleged onset date and 42 years old on the date of the final Social Security Agency ("Agency") decision. Plaintiff has a tenth grade education, and past relevant work as a childcare monitor and a barber. Generally, Plaintiff's alleged disability consists of metal pins in his knee, right knee problems, back pain, abdominal problems, hemorrhoids, acid reflux, gastritis, and depression. (T. 221.)

### B. Procedural History

On January 14, 2014, Plaintiff filed an application for Supplemental Security Income, alleging disability beginning on September 1, 2012. (Dkt. No. 8, Admin. Tr. "[T.]" 102-03.) Plaintiff's application was initially denied on May 13, 2014, after which he timely requested a hearing before an Administrative Law Judge ("ALJ"). (T. 117-131.) On April 30, 2015, Plaintiff appeared in a video hearing before the ALJ, Paul Greenberg. (T. 26.) On July 31, 2015, the ALJ issued a written decision finding Plaintiff not disabled under the Social Security Act. (T. 11-20.) On June 7, 2016, the Appeals Council denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner. (T. 1-4.) Thereafter, Plaintiff timely sought judicial review in this Court.

### C. The ALJ's Decision

Generally, in his decision, the ALJ made the following six findings of fact and conclusions of law. (T. 13-20.) First, the ALJ found that Plaintiff has not engaged in substantial gainful activity since January 14, 2014, the application date. (T. 13.) Second, the ALJ found that Plaintiff has the following severe impairments: dysfunction of major joint, arthritis,

degenerative disc disease, affective disorder, and anxiety disorder. (T. 13-14.) Third, the ALJ found that Plaintiff's severe impairments, alone or in combination, do not meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, App. 1 (the "Listings"). (T. 14-15.) In doing so, the ALJ considered Listings 1.02, 12.04, and 12.06, as well as paragraph B criteria and paragraph C criteria with respect to Plaintiff's mental impairments. (T. 14.) Fourth, the ALJ found that Plaintiff has the residual function capacity ("RFC") to perform

> sedentary work as defined in 20 CFR 416.967(a) except with the following additional limitations: [t]he claimant occasionally can climb ramps and stairs, balance, stoop, kneel, couch [*sic*] and crawl. He cannot climb ladders or scaffolds. The claimant frequently can interact with supervisors, and occasionally can interact with co-workers and the public.

(T. 15-18.) Fifth, the ALJ found that Plaintiff is unable to perform any past relevant work. (T. 18.) Sixth, and finally, the ALJ found that there are other jobs that exist in significant numbers in the national economy that the claimant can perform. (T. 19.)

Because this Decision and Order is intended primarily for the review of the parties, the Court will not further recite the contents of the ALJ's decision or the other documents contained in the administrative record. Rather, the Court will refer to the administrative record where necessary to analyze the parties' arguments in support of their respective motions.

### D. The Parties' Briefings on Their Cross-Motions for Judgment on the Pleadings

#### 1. Plaintiff's Memorandum of Law

Generally, Plaintiff advances three arguments in support of his motion for judgment on the pleadings. First, Plaintiff argues that the ALJ erred in determining that his lung cancer did not constitute a severe impairment. (Dkt. No. 9 at 8-9 [Plf.'s Memo. of Law].)

3

Second, Plaintiff argues that the ALJ erred in evaluating the medical opinion evidence of record when determinating Plaintiff's RFC in three ways: (a) the ALJ improperly relied on certain notes contained in the medical records of Dr. Ivan Antonevich, M.D., a pain management physician, because these notes were "repeated, verbatim, numerous times" and were "obviously a cut and paste carry over from one visit to the next without any evidence that the subject matter was even inquired into by the author of the note"; (b) the ALJ "completely mischaracterized" the opinions of Dr. Benjamin Sommer, D.O., by concluding that these opinions "indicated an ability to perform sedentary work";[1] and (c) the ALJ improperly afforded the opinion of Dr. Tanya Perkins-Mwantuali, M.D., a consultative examiner, "substantial weight," because (i) as noted above, the ALJ "misunderstood" Dr. Sommer's conclusions regarding Plaintiff's limitations, and (ii) Dr. Perkins-Mwantuali is a pediatric internist, and Plaintiff was therefore not a "proper patient" of hers. (*Id.* at 3-5, 9-12)

Third, Plaintiff argues that Defendant violated the Agency's regulations, as well as Plaintiff's right to due process, by improperly retaining "outside" consultants to examine Plaintiff. (*Id.* at 12-17.) More specifically, Plaintiff argues as follows: (a) Defendant violated 20 C.F.R. § 404.1519h because there is no evidence in the record to suggest that (i) the Agency made any effort to contact one of Plaintiff's treating sources to perform the examination that a single decision maker found necessary, or (ii) the Agency could have plausibly believed that Industrial Medical Associates–its "usual source" that "performs voluminous cursory evaluations

---

[1] More specifically, Plaintiff argues that, contrary to the ALJ's interpretation, Dr. Sommer's RFC assessment contains findings that are inconsistent with a finding of an ability to perform sedentary work (including the finding that Plaintiff can sit for no more than 20 minutes at a time and for no more than one hour per day, given that sedentary work requires the ability to sit for most of a workday). (*Id.* at 5.)

4

without specialization" on its behalf–was better equipped than Plaintiff's treating sources to perform the examination; (b) there is no record evidence in the record to suggest that any of the bases for obtaining a consultative examination from a non-treating source, as set forth in 20 C.F.R. § 404.1519i, existed (or that the Agency even weighed the considerations in this regulation); and (c) the Agency "violated Plaintiff's due process right to adequate notice" pursuant to 20 C.F.R. § 404.1519j by failing to advise him of his right to (i) object to the consultative examiner chosen to perform the examination or (ii) request that his own doctor perform the examination.[2] (*Id.*)

### 2. Defendant's Memorandum of Law

Generally, in support of her motion for judgment on the pleadings, Defendant advances three arguments. First, in response to Plaintiff's first argument, Defendant argues that the ALJ properly determined that Plaintiff's "lung tumor" was a non-severe impairment for five reasons: (a) record evidence established that the tumor, which had been identified as suspicious in 2014, was successfully removed in January 2015 and did not significantly limit Plaintiff's ability to function; (b) his condition before the tumor was removed was reported as "well-controlled," he experienced no pain or difficulty eating, and he was able to participate in sports; (c) although his pulmonary function test was abnormal, he had sufficient pulmonary volume for a left lower lobectomy; (d) although several medical records refer to his breathing difficulties, other notes reflect that he denied breathing problems and there is no clear indication that his shortness of breath was causally related to the lobectomy, particularly because he was a smoker; and (e) even

---

[2] In conjunction with his due process argument, Plaintiff has filed a copy of the form that (according to Plaintiff) the Agency typically uses to notify claimants of a scheduled consultative examination. (Dkt. No. 9, Attach. 1.)

if the ALJ erred in determining that his lung tumor constituted a non-severe impairment, this error was harmless because there is no evidence that any related symptoms would adversely affect his ability to perform sedentary work. (Dkt. No. 10 at 5-8 [Def.'s Memo. of Law].)

Second, in response to Plaintiff's second argument, Defendant argues that the ALJ properly evaluated the record medical evidence as a whole and that his RFC determination was supported by substantial evidence. (*Id*. at 8-16.) More specifically, Defendant argues as follows: (a) the ALJ (i) thoroughly discussed Plaintiff's dysfunction of a major joint, arthritis, and degenerative disc disease, (ii) appropriately considered Plaintiff's hearing testimony about his activities, and (iii) correctly concluded that Dr. Perkins-Mwantuali's examination findings were consistent with the record as a whole; (b) Plaintiff has not identified any evidence supporting his argument that certain excerpts appearing in multiple medical records prepared by Dr. Antonevich were "rote and unverified"; (c) other records reflected Plaintiff's ability to perform sedentary work; and (d) the "majority of Dr. Sommer's opinion is not inconsistent with" the ALJ's RFC determination. (*Id.*)

Third, in response to Plaintiff's third argument, Defendant argues that the ALJ did not err in obtaining a consultative examination from an outside source (i.e., Dr. Perkins-Mwantuali) for five reasons: (a) 20 C.F.R. § 404.1519h permits "the Commissioner to exercise her judgment in determining whether to obtain" a consultative examination from a treating source; (b) language used in 20 C.F.R. § 404.1519g also supports the conclusion that the Commissioner has discretion in choosing the source from which a consultative examination is obtained (for example, the regulation provides that the medical source "*may* be [the claimant's] physician or psychologist, *or another source*," and refers to "the medical source *we* choose"; (c) the single decision maker

noted that a "specific exam" was needed and, in fact, the record contains the results of a lumbosacral spine x-ray examination, the results of which were referenced in Dr. Perkins-Mwantuali's report; (d) the mere fact that Dr. Perkins-Mwantuali signed her report with the notation "Internal Medicine/Pediatrics," does not suggest that Dr. Perkins-Mwantuali lacked skill or training, or was otherwise unqualified to examine Plaintiff; and (e) even if the ALJ did err in obtaining a consultative examination from Dr. Perkins-Mwantuali, Plaintiff has not identified any basis for concluding that the error harmed him or that he was denied the opportunity to supplement his records with any additional evidence from his treating sources. (*Id.* at 16-18.)

## II. RELEVANT LEGAL STANDARDS

### A. Standard of Review

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. 42 U.S.C. § 405(g); *accord, Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will be reversed only if the correct legal standards were not applied, or it was not supported by substantial evidence. *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *accord, Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983); *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to

support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, the Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

### B. Standard to Determine Disability

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act. 20 C.F.R. § 404.1520. The Supreme Court has recognized the validity of this sequential evaluation process. *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987). The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability

to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform. Under the cases previously discussed, the claimant bears the burden of the proof as to the first four steps, while the [Commissioner] must prove the final one.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982); *accord, McIntyre v. Colvin,* 758 F.3d 146, 150 (2d Cir. 2014). "If at any step a finding of disability or nondisability can be made, the SSA will not review the claim further." *Barnhart v. Thompson,* 540 U.S. 20, 24 (2003).

### III. ANALYSIS

#### A. Whether the ALJ Erred in Assessing the Medical Opinions and in Formulating Plaintiff's RFC

After carefully considering the matter, the Court answers this question in the affirmative for the reasons set forth in Plaintiff's memorandum of law. (Dkt. No. 9 at 3-5, 9-12 [Plf.'s Memo. of Law].) To those reasons, the Court adds the following analysis.

Residual functional capacity ("RFC") is defined as

> what an individual can still do despite his or her limitations . . . . Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis, and the RFC assessment must include a discussion of the individual's abilities on that basis. A "regular and continuing basis" means 8 hours a day, for 5 days a week, or an equivalent work schedule.

9

*Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999) (quoting SSR 96-8p, 1996 WL 374184, at *2 (July 2, 1996)). "Work-related mental activities generally required by competitive, remunerative work include the abilities to: understand, carry out, and remember instructions; use judgment in making work-related decisions; respond appropriately to supervision, co-workers and work situations; and deal with changes in a routine work setting." SSR 96-8p, 1996 WL 374184, at *6; *accord*, SSR 85-15, 1985 WL 56857 (Jan. 1, 1985).

"An ALJ should consider 'all medical opinions received regarding the claimant.'" *Reider v. Colvin*, 15-CV-6517, 2016 WL 5334436, at *5 (W.D.N.Y. Sept. 23, 2016) (quoting *Spielberg v. Barnhart*, 367 F.Supp.2d 276, 281 [E.D.N.Y. 2005]). "The ALJ is not permitted to substitute his own expertise or view of the medical proof for the treating physician's opinion or for any competent medical opinion." *Greek v. Colvin*, 802 F.3d 370, 375 (2d Cir. 2015) (citing *Burgess v. Astrue*, 537 F.3d 117, 131 [2d Cir. 2008]). In assessing a plaintiff's RFC, an ALJ is entitled to rely on opinions from both examining and non-examining State agency medical consultants because these consultants are qualified experts in the field of social security disability. 20 C.F.R. §§ 404.1512(b)(1)(vi), 404.1513(c), 404.1527(e); *see also Frey ex rel. A.O. v. Astrue*, 485 F. App'x 484, 487 (2d Cir. 2012) (summary order) ("The report of a State agency medical consultant constitutes expert opinion evidence which can be given weight if supported by medical evidence in the record."); *Little v. Colvin*, 14-CV-0063, 2015 WL 1399586, at *9 (N.D.N.Y. Mar. 26, 2015) ("State agency physicians are qualified as experts in the evaluation of medical issues in disability claims. As such, their opinions may constitute substantial evidence if they are consistent with the record as a whole.") (internal quotation marks omitted). The RFC determination "must be set forth with sufficient specificity to enable [the Court] to decide

whether the determination is supported by substantial evidence." *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984).

The opinion of a treating source will be given controlling weight if it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 416.927(c)(2); *accord, Greek v. Colvin*, 802 F.3d 370, 375 (2d Cir. 2015); *Brogan-Dawley v. Astrue*, 484 F. App'x 632, 633-34 (2d Cir. 2012) (summary order). When controlling weight is not afforded to the opinion of a treating physician (or when assessing a medical opinion from a non-treating source), the ALJ should consider the following factors to determine the proper weight to afford the opinion: "(i) the frequency of examination and the length, nature, and extent of the treatment relationship; (ii) the evidence in support of the opinion; (iii) the opinion's consistency with the record as a whole; and (iv) whether the opinion is from a specialist." *Shaw v. Chater*, 221 F.3d 126, 134 (2d Cir. 2000) (quoting *Clark v. Comm'r of Soc. Sec.*, 143 F.3d 115, 118 [2d Cir. 1998]).

Although an explicit and "slavish recitation of each and every factor" is not required, "the ALJ's reasoning and adherence to the regulation [must be] clear." *Atwater v. Astrue*, 512 F. App'x 67, 70 (2d Cir. 2013) (summary order); *accord, Halloran v. Barnhart*, 362 F.3d 28, 31-32 (2d Cir. 2004) (per curiam) (affirming the ALJ's decision, which "d[id] not expressly acknowledge the treating physician rule," because "a searching review of the record" revealed that "the substance of the treating physician rule was not traversed"); *Marquez v. Colvin*, 12-CV-6819, 2013 WL 5568718, at *12 (S.D.N.Y. Oct. 9, 2013) ("Although the ALJ did not explicitly recite the factors, his decision nonetheless adequately considered each factor[.]"). When an ALJ decides that affording controlling weight to a treating physician's opinion is unwarranted, he or

11

she must "give good reasons in [the] notice of determination or decision for the weight [that he or she] give[s] [the claimant's] treating source opinion." 20 C.F.R. § 404.1527(c)(2); *see also Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999) (noting that the failure to provide "good reasons" for the weight afforded to a treating physician is a ground for remand).

The Court concludes that remand is required for the ALJ to re-weigh the medical opinions of record, determine Plaintiff's physical RFC, and set forth the bases for his conclusions with greater clarity.[3] The Court is mindful that, "[i]n formulating a plaintiff's RFC, an ALJ does not have to adhere to the entirety of one medical source's opinion." *Atkinson v. Comm'r of Soc. Sec.*, 16-CV-0809, 2017 WL 1288723, at *7 (N.D.N.Y. Apr. 6, 2017) (Suddaby, J., collecting cases). However, under the circumstances of this case, the Court finds that a review of the ALJ's decision suggests that he ALJ failed to abide by the treating physician rule. Moreover, setting aside this issue (which, standing alone, requires remand), the Court is unable to determine the soundness of the ALJ's evaluation of the evidence in concluding that Plaintiff is able to perform sedentary work. The Court reaches these conclusions for the following reasons.

As an initial matter, the medical opinions of record–including those relied upon by the ALJ–do not appear to support an RFC permitting sedentary work. Sedentary work requires the abilities to sit for six hours, stand and walk for two hours, and lift or carry up to ten pounds in an eight-hour workday. 20 C.F.R. §§ 404.1567(a), 416.967(a); SSR 83-10, 1983 WL 31251, at *5 (1983). In a medical source statement, Dr. Benjamin Sommer (an osteopathic physician who treated Plaintiff from October 2013 through February 2015) found that Plaintiff has the

---

[3] Plaintiff advances no arguments with respect to the propriety of the ALJ's conclusions regarding his mental impairments.

following restrictions: (1) lifting five pounds or less on an "occasional" and/or "frequent" basis; (2) standing and/or walking "without leaning or [a] supportive device" for "10 minutes or less" at one time without a break, and for "1 hour or less" total during an 8-hour workday; and (3) sitting in an upright position "without leaning or slouching" and with "hands free to use" for "20 minutes or less" at a time without a break, and for "1 hour or less" in total during an 8-hour workday.[4] (*Id.*) With respect to manipulative functions, Dr. Sommer found that Plaintiff has "severe" limitations in "[r]eaching all directions (including overhead)," and "mild" limitations in handling and fingering.[5] (T. 655.) Dr. Sommer concluded that Plaintiff's "Pain, Fatigue[,] and Concentration Deficits" would "caus[e him] to be off-task for at least 50% of the time in an 8-hour block of time." (*Id.*)

Dr. Ivan Antonevich (a pain management physician who treated Plaintiff from July 2012 through January 2015) also provided a medical source statement. Although Dr. Antonevich opined that Plaintiff could lift weight in excess of the threshold to qualify for sedentary work, he also opined that Plaintiff was restricted to sitting in an upright position "without leaning or slouching" and with "hands free to use" for "20 minutes or less" at a time without a break, and for "4 hours or less" in total during an 8-hour workday (i.e., less than is generally required for sedentary work). (T. 734.) As the ALJ noted, Dr. Antonevich also did not opine as to concrete restrictions on Plaintiff's ability to "stand and/or walk without leaning or supportive device,"

---

[4] The medical source statement form completed by Dr. Sommer defines "[o]ccasionally" as "1 to 2 times per hour throughout an 8-hour period of time" and "[f]requently" as "4 to 6 times an hour throughout an 8-hour period of time." (T. 654.)

[5] The form medical source statement completed by Dr. Sommer provided four answers to the questions regarding Plaintiff's manipulative functions: "Unlimited," "Mild," "Severe," and "No Ability." (T. 655.)

either "at one time and without a break" or in total over the course of an 8-hour day. (T. 734.) Rather, Dr. Antonevich explained as follows, in a handwritten notation: "difficult to determine, uses a cane for right knee pain, possibly having right knee replaced." (*Id.*)

Finally, Defendant retained Dr. Tanya Perkins-Mwantuali, a consultative examiner, to perform a physical examination of Plaintiff. Following her examination, Dr. Perkins-Mwantuali found that Plaintiff has "moderate to marked limitations with walking, standing, kneeling, crawling, squatting, and climbing," as well as "[m]ild limitation[s with] bending, twisting, lifting, pushing, pulling, reaching, and carrying." (T. 470-71.) However, Dr. Perkins-Mwantuali "did not objectively quantify any such limitations, and the Second Circuit has held that the 'use of the terms moderate and mild, without additional information, does not permit the ALJ . . . to make the necessary inference that [the plaintiff] can perform the exertional requirements of sedentary work.'" *Mercedes v. Comm'r of Soc. Sec.*, 15-CV-2986, 2017 WL 1323789, at *13 (E.D.N.Y. Mar. 28, 2017), quoting *Curry v. Apfel*, 209 F.3d 117, 123 [2d Cir. 2000]) (internal quotation marks omitted).

The use of this potentially vague terminology, standing alone, does not necessarily mandate remand. *See Burgos v. Colvin*, 15-CV-6420, 2016 WL 5661738, at *13 (W.D.N.Y. Sept. 30, 2016) (noting that "the use of imprecise phrases by a consultative examiner does not automatically render an opinion impermissibly vague," so long as the "consulting opinion is otherwise supported by clinical findings, an examination of the claimant, or other objective evidence in the record"); *accord, Rosenbauer v. Astrue*, 12-CV-6690, 2014 WL 4187210, at *16 (W.D.N.Y. Aug. 22, 2014) (collecting cases). Here, Dr. Perkins-Mwantuali obtained an x-ray examination of Plaintiff's lumbosacral spine, performed a physical examination, and discussed

14

Plaintiff's activities of daily living.[6] (T. 469-70.) However, Dr. Perkins-Mwantuali did not opine as to any restriction (in either precise terms or vague terms) on Plaintiff's ability to sit for any length of time (which, as noted above, is a significant component of sedentary work). SSR 96-9P, 1996 WL 374185, at *6 (1996) ("In order to perform a full range of sedentary work, an individual must be able to remain in a seated position for approximately 6 hours of an 8-hour workday . . . . If an individual is unable to sit for a total of 6 hours in an 8-hour work day, the unskilled sedentary occupational base will be eroded.").[7]

Additionally (and confusingly), the ALJ found Dr. Perkins-Mwantuali's opinion–which he afforded substantial weight–to be "generally consistent with the medical evidence of record *and the sedentary work assessment offered by [Dr.] Sommer[.]*" (T. 17 [emphasis added].) Setting aside the fact that nowhere else in his decision did the ALJ discuss (or even mention) Dr. Sommer's medical source statement, it is unclear to the Court how (1) the two opinions could be viewed as "generally consistent" and (2) Dr. Sommer's medical source statement could be fairly

---

[6] With respect to his activities of daily living, Plaintiff reported that he cooks three times per week, does not do any cleaning or laundry, shops once per month, "occasionally" performs "[c]hild care," showers three times per week, and listens to the radio. (T. 468.) Dr. Perkins-Mwantuali observed that Plaintiff had an "abnormal" gait with a "mild limp on the right," and that he "[s]ometimes uses a cane and knee brace," but did not on the day of the exam. (*Id.*)

[7] The Court notes that Dr. Antonevich's observations that Plaintiff's ability to stand and/or walk are "difficult to determine" because he "uses a cane for right knee pain, [and is] possibly having right knee replaced" are certainly fair considerations. (T. 734.) However, Dr. Antonevich's refusal to offer any concrete opinions about Plaintiff's ability to sit and/or stand–postural issues that are central to sedentary work–merely highlights the uncertainty related to Plaintiff's physical restrictions (whether he uses a cane or not, and whether he leans or not). The ALJ characterized this portion of Dr. Antonevich's medical source statement as "equivocal" and stated that he was "not persuaded" by Dr. Antonevich's opinion that Plaintiff's pain would cause two absences per month. (T. 17-18.) This abbreviated analysis of Dr. Antonevich's opinion also provides relatively little insight into the formulation of Plaintiff's physical RFC.

characterized as opining that Plaintiff was capable of performing sedentary work. From this fleeting reference to Dr. Sommer, the Court cannot conclude that the ALJ provided the requisite "good reasons" for declining to afford his opinion controlling weight. 20 C.F.R. § 404.1527(c)(2); *see also Snell*, 177 F.3d at 133.[8]

Moreover, the ALJ found Plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms "not entirely credible." (T. 16.) In discussing Plaintiff's assertions that he had difficulty walking, the ALJ noted that "a planned knee replacement surgery is expected to help his ambulation[.]" (*Id.*) The value of the ALJ's observation in this regard is, at best, dubious. Plaintiff had not yet been medically cleared for surgery, and the efficacy of future surgery in relation to any exertional requirements was, at the time of the ALJ's decision, a matter of speculation.

In light of these considerations, the Court concludes that the ALJ's finding that Plaintiff can perform sedentary work was not supported by substantial evidence. Remand is appropriate so that the ALJ may properly weigh the medical opinions of record and clarify the basis for his assessment of the evidence in formulating Plaintiff's RFC. *See Martinbeault v. Astrue*, 07-CV-1297, 2009 WL 5030789, at *5 (N.D.N.Y. Dec. 14, 2009) (Hurd, J., adopting Report-Recommendation of Bianchini, M.J.) ("This Court may not re-weigh the evidence and may not

---

[8] Defendant notes that, in his benefits application, Plaintiff "merely commented that he could not lift 27 pounds *without problems* and that he could not stand more than half an hour without right knee pain *unless* he was on medication." (Dkt. No. 10 at 13 [citing T. 17] [emphasis added].) Defendant argues that "[t]his suggests that Plaintiff's limitations were easily consistent with the RFC for sedentary work assigned by the ALJ." (*Id.*) In light of the issues discussed above, the Court cannot conclude that drawing such inferences from the contents of Plaintiff's four-year-old benefits application constitutes substantial evidence supporting the ALJ's physical RFC determination.

'create post-hoc rationalizations to explain the Commissioner's treatment of evidence when that treatment is not apparent from the Commissioner's decision itself.'") (quoting *Grogan v. Barnhart*, 399 F.3d 1257, 1263 [10th Cir. 2005]).

B.  **Other Arguments Advanced by Plaintiff**

As noted above, Plaintiff argues that the ALJ erred in finding that his lung cancer constitutes a non-severe impairment. (Dkt. No. 9 at 8-9 [Plf.'s Memo. of Law].) The ALJ's basis for his conclusion was that "the condition has been treated, and it is *not yet apparent* that severe symptoms from this condition will persist and meet the durational requirement." (T. 16 [emphasis added].) Because remand is appropriate, the Court declines to reach this issue at this time. On remand, the ALJ may consider whether the durational requirement has now been met or whether there is any other basis for finding Plaintiff's lung cancer to constitute a severe impairment.[9]

Moreover, the Court declines to reach Plaintiff's argument that certain notations contained in Dr. Antonevich's medical records appear to have been "cut and paste[d]" and not actually the subject of discussion at every appointment.[10] Rather, the ALJ may review in the first

---

[9] Even if an impairment is properly characterized as non-severe, the ALJ must "consider the limiting effects of all [off the plaintiff's] impairment(s), even those that are not severe, in determining [his or her] residual functional capacity." 20 C.F.R. § 416.945(e).

[10] One specific passage from Dr. Antonevich's records which Plaintiff identifies as repetitious is the following: "He denies fever, weight gain, night sweats, vision problems, hearing problems, breathing problems, asthma, emphysema, heart problems, palpitations, constipation, diarrhea, ulcers, incontinence of stool, reflux, kidney problems, difficulty urinating, incontinence of urine, rash, lesions, epilepsy, dizziness, seizures, bleeding, bruising, diabetic problems, thyroid problems." (Dkt. No. 9 at 11 [Plf.'s Memo. of Law; *accord, e.g.,* T. 320 [record from office visit on 10/15/2013 for "low back pain"], 311 [record from office visit on 1/20/2014 for "low back pain"].) Another passage that Plaintiff identifies as repetitious–across records from multiple providers in the same medical office–is the following: "He reports being

17

instance the allegedly rote and repetitive language contained in the medical records and give those records the weight that he deems appropriate in re-formulating Plaintiff's RFC.[11]

Finally, with respect to Plaintiff's argument that he did not receive notice of his right to object to the scheduling of a consultative examination with Dr. Perkins-Mwantuali, the Court notes only that this issue (standing alone) does not require remand for three reasons: (1) at the hearing, Plaintiff (who was represented during the administrative proceedings) stated that he did not have any objections to the medical file and did not otherwise object to the manner in which the consultative examination was scheduled or carried out; (2) 20 C.F.R. § 404.1519j does not expressly require the Commissioner to "notify [a claimant] of his [or her] right to object to the doctor chosen for the exam, or . . . to request that his treating doctors perform the consultative examination" (Dkt. No. 9 at 13); and (3) even if Plaintiff did not receive such notice, he does not argue that a "good reason" existed for disqualifying Dr. Perkins-Mwantuali from performing the examination. To the extent that Plaintiff may be understood to argue that his physical

---

independent with ADLs. He reports being able to comfortably sit for 30 minutes, comfortably stand for 30 minutes, comfortably lift 15 lb[.] He does not have difficulty taking care of [him]self[,] is not able to pick up objects from the floor comfortably. He can walk without having to stop more than [a] half mile. Tasks he can not do include, [p]atient states [he is] unable to carry his child comfortably no heavy lifting [*sic*]." (Dkt. No. 9 at 4; *accord, e.g.,* T. 372 [record of office visit with Dr. Antonevich on 7/11/2012 for "right knee pain"], 479 [record of office visit with Anne-Marie Edmunds, P.A., on 10/16/2014 for "low back pain"].)

[11]  *See generally, e.g., Wilson v. Comm'r of Soc. Sec.*, 2017 WL 1194229, at *4 (N.D.N.Y. Mar. 30, 2017) (Mordue, J.) (noting that certain treatment notes relied upon by the ALJ in formulating plaintiff's RFC were "very brief, . . . largely repetitive, [and] most follow [a] general form . . ."). To be clear, the Court does not mean to suggest that the ALJ is required to assign any particular value to the notes or the fact that they are (in part) repetitious across multiple appointments. These considerations are more appropriately left to the ALJ, so long as his findings and conclusions are set forth in his decision with sufficient clarity to permit judicial review.

consultative examination was deficient because it was performed by "a pediatrician," the specialty (if any) of a medical opinion's source is more appropriately considered by the ALJ as part of his determination of the weight to afford the opinion. 20 C.F.R. § 416.927(c)(5); *accord, Shaw*, 221 F.3d at 134. The Court would note only that, while Dr. Perkins-Mwantuali has a specialty in pediatrics, the record reflects that she listed her primary specialty as internal medicine. (T. 471.)

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 9) is **GRANTED**; and it is further

**ORDERED** that Defendant's motion for judgment on the pleadings (Dkt. No. 10) is **DENIED**; and it is further

**ORDERED** that this matter is **REMANDED** to Defendant, pursuant to 42 U.S.C. § 405(g), for further proceedings consistent with this Decision and Order.

Dated: May 30, 2017
       Syracuse, New York

_____
Hon. Glenn T. Suddaby
Chief U.S. District Judge